















JAH   2/13/04   13:10
3:04-CV-00168   WOODALL V. DRIVER
*4*
*PWRITHC.*

Shawn Woodall, Pro-Se
#57984-198
Metropolitan Correctional Center
808 Union Street
San Diego, California 92101

FILED

04 FEB 13 AM 9: 22

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:                      DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE IRMA E. GONZALES)

SHAWN JAMES ALLEN WOODALL,           ) Case No. 04cv0168-IEG (NLS)
                                     )
              Petitioner,            )
                                     ) NOTICE OF AMENDMENT AND
       v.                            ) AMENDED PETITION FOR WRIT
                                     ) OF HABEAS CORPUS UNDER
JOE D. DRIVER,                       ) 28 U.S.C. SECTION 2241
                                     )
              Respondent.            )
_____)

TO: CAROL LAM, UNITED STATES ATTORNEY
    ANNE K. PERRY, Assistant United States Attorney
    JOE D. DRIVER, Warden, Bureau of Prisons

     PLEASE TAKE NOTICE that as soon as Petitioner may be

heard, the Petitioner, Shawn James Allen Woodall, Pro-Se,

will ask this Court to amend the original pleading for

Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241,

filed on January 27, 2004, as follows.

///

///

///

CR   ATTY MAINT        4

# I.

## AMENDMENT

The Petitioner fully incorporates the original Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, that was filed before this Honorable Court on January 27, 2004, to amend the pleading as follows:

GROUND ONE: The Bureau of Prisons lacked the statutory and regulatory authority to forfeit the 108 day sentence reduction the administrative agency previously granted on April 23, 2002, thus the Petitioner is unlawfully in custody.

GROUND TWO: The Bureau of Prisons violated the Petitioner's Fifth Amendment right to Procedural Due Process by failing to provide the Petitioner notice or an opportunity to be heard, thus the Petitioner is unlawfully in custody.

Pursuant to Fed.R.Civ.P. 15(a) "A party may amend the party's pleading once as a matter of course at anytime before a responsive pleading is served".

In this case at bar, no responsive pleading has been served.

Respectfully Submitted,

February 10, 2004
(Dated)

SHAWN JAMES ALLEN WOODALL

2

1   Shawn Woodall, Pro-Se
    #57984-198
2   Metropolitan Correctional Center
    808 Union Street
3   San Diego, California 92101

4

5

6

7

8                   UNITED STATE DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10                (HONORABLE IRMA E. GONZALES)

11

12   SHAWN JAMES ALLEN WOODALL,  ) Case No. 04cv0168-IEG (NLS)
                                 )
13              Petitioner,      )
                                 )
14         v.                    ) MEMORANDUM OF POINTS AND
                                 ) AUTHORITIES IN SUPPORT OF
15   JOE D. DRIVER,              ) AMENDMENT TO PETITION FOR
                                 ) WRIT OF HABEAS CORPUS UNDER
16              Respondent.      ) 28 U.S.C. § 2241
                                 )
17   _____)

18

19                          II.

20                STATEMENT OF THE CASE

21        On January 27, 2004, the Petitioner filed a Petition

22   for Writ of Habeas Corpus under 28 U.S.C. § 2241, alleging

23   that he had been deprived of liberty without Due Process

24   of Law, secured by the Fifth Amendment to the United States

25   Constitution. See Exhibit 1, filed herewith and fully

26   incorporated hereto.

27        This Petition is brought under the custody term of

28   imprisonment Judgment and Commitment Order imposed by

                            3

the United States District Court for the Southern District of California, case number 02cr2402-W, in which the Petitioner is currently imprisoned unlawfully.

III.

FACTS

On December 15, 2000, a jury convicted the Petitioner in case number 00cr1768-H (the "Alien Smuggling Case") of violating 8 U.S.C. § 1324(a)(2)(B)(II), 8 U.S.C. § 1324(a)(2)(B)(III) and 18 U.S.C. § 2. The Petitioner was sentenced to 37 months imprisonment with 3 years of supervised release. While the Petitioner was serving that prison sentence he was notified by the Bureau's Drug Abuse Program Coordinator, Dr. Crago, that the BOP had accepted him into the Comprehensive Residential Substance Abuse Treatment Program ("RDAP"). The BOP also notified the Petitioner that he was eligible for a statutory sentence reduction pursuant to 18 U.S.C. § 3621(e)(2)(B) upon his successful completion of five hundred hours of treatment in RDAP.

On July 9, 2001, the Petitioner began his participation in RDAP. The RDAP program is defined by statute as "a course of individual and group activities, lasting between 6 and 12 months, in residential treatment facilities set apart from the general prison population" 18 U.S.C. § 3621(e)(5)(A).

On April 10, 2002, nine months after the Petitioner began his participation in RDAP, he successfully completed

4

the program and received a signed Certificate of Completion from the RDAP staff.

On April 23, 2002, the Bureau used its statutory discretion to find that the Petitioner, having been convicted of a non-violent crime, had successfully completed RDAP and therefore reduced his custody by 108 days pursuant to the provisions of § 3621(e)(2)(B). This reduction changed the Petitioner's projected release date (for the alien smuggling case) from January 23, 2003, to October 7, 2002. In conjunction with his completion of RDAP, this sentence reduction also made him eligible for a community-based pre-release custody program pursuant to 18 U.S.C. § 3624(c). After granting this sentence reduction, the Bureau transferred the Petitioner to the Pacific Furlough Facility ("PFF") to complete six months of pre-release custody.

On July 4, 2002, the Petitioner walked away from the PFF. On July 5, 2002, the Bureau forfeited the Petitioner's 108-day custody reduction previously granted pursuant to § 3621(e)(2)(B), without giving the Petitioner notice of the forfeiture or the opportunity to be heard.

On July 8, 2002, the Petitioner self-surrendered to federal authorities on the federal arrest warrant issued by the United States Marshals Service.

On August 8, 2002, Mr. Dan McCarthy, the Disciplinary Hearing Officer ("DHO") at the Metropolitan Correctional Center, found that the Petitioner had committed a code

200 violation of institutional violations by walking away
from the PFF, and therefore forfeited a total of twenty
seven days Good Conduct Time ("GCT"). This 27 day
forfeiture of GCT was made pursuant to 18 U.S.C.
§ 3624(b)(1).

The Grand Jury returned an indictment for the walk
away from PFF, charging the Petitioner with escape, a
violation of 18 U.S.C. § 751(a) in case number 02cr2402-W
(the "Judge Whelan Case").

On September 30, 2002, the Petitioner pled guilty
to the indictment in the Judge Whelan Case and was
sentenced to six months imprisonment to run consecutive
to any term remaining on his conviction in the Alien
Smuggling Case. In computing the Petitioner's remaining
term for the Alien Smuggling Case, the BOP first forfeited
his 108-day sentence reduction, changing the expiration
date of his sentence for that case from October 7, 2002,
back to January 23, 2003. Next, they forfeited his twenty
seven days of GCT. Under these computations, the
Petitioner's prison term for the Alien Smuggling Case
would expire on February 19, 2003, and he would then begin
serving the six-month consecutive sentence for the Judge
Whalen Case.

On May 23, 2003, the BOP transferred the Petitioner
back to a Community Corrections Center ("CCC"). Under
the BOP's computation, the Petitioner was allegedly still
serving the custodial portion of his sentence at the CCC

6

on the Judge Whalen Case.

On July 9, 2003, the Petitioner allegedly walked away from the CCC. Since the BOP's computation alleged that the Petitioner was still serving the custodial portion of his sentence, the BOP stopped the sentence on this day.

On December 23, 2003, the BOP pulled the Petitioner back into close custody, alleging the Petitioner still owed time on the Judge Whalen Case.

· This Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 followed on January 27, 2004.

IV.

THE COURT SHOULD GRANT THIS GREAT WRIT

The Petitioner acknowledges that the forfeiture of his twenty-seven days of good conduct time ("GCT") was lawful, but asserts that the forfeiture of his 108-day sentence reduction was not lawful. Specifically the Petitioner asserts: 1) The BOP lacked the statutory and regulatory authority to forfeit the 108-day sentence reduction that the agency had previously granted on April 23, 2002; 2) Even if the BOP had the authority to forfeit this sentence reduction, the agency violated the Petitioner's Fifth Amendment right to Procedural Due Process by failing to provide the Petitioner notice or an opportunity to be heard. The remedy if either assertion is found to be true is to Grant this Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, ordering the

7

Petitioner's immediate release from custody, as the Petitioner was unlawfully held over his term of imprisonment and continues to be held over his term of imprisonment in violation of the Constitution and the laws of the United States. It would also be appropriate to reduce the Petitioner's term of supervised release by a minimum of 108-days.

A. GROUND ONE: The Bureau of Prisons lacked the statutory and regulatory authority to forfeit the 108-day sentence reduction the administrative agency previously granted on April 23, 2002, thus the Petitioner is unlawfully in custody

The Petitioner completed the residential drug abuse treatment program on April 10, 2002, thus fulfilling the primary requirement to be considered for a sentence reduction. 18 U.S.C. § 3621(e)(2)(B). The Bureau then transferred the Petitioner to a community corrections center. Before the Bureau may make such a transfer, the inmate must have six months or less remaining on his term of imprisonment. Title 18 U.S.C. § 3624(c) addresses the requirements for pre-release custody:

> Pre-release custody. The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last ten per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. [18 U.S.C. § 3624(c)(2003)]

8

The Code of Federal Regulations addressing the Bureau's drug treatment programs also notes that in addition to early release, an incentive for completion of the RDAP is a maximum of 108 days in a Community Corrections Center. 28 CFR § 550.57(a)(2)(July 2001).

Before making a decision to grant a sentence reduction and transfer an inmate to a community-based program, the Bureau requires RDAP staff to carefully review the eligibility of the inmate. Chapter 6.6 of Program Statement 5330.10 states:

> Final Review of Inmate's Provisional § 3621(e) Eligibility
> The decision to grant an inmate early release is a significant one for the Bureau of Prisons; therefore, it is essential that institutional staff carefully review all relevant statutory and regulatory criteria before final release of an inmate under Title 18 U.S.C. § 3621(e). The unit manager or designee must ensure completion of revised Attachment K, "Final Review of Inmate's Provisional Early Release" before transfer to a community based program or detainer. P.S. 5330.10, Chapter 6.6

This final review of the inmate's early release is meant to ensure that the Bureau makes an appropriate decision when considering the inmate's sentence reduction. This section of the Program Statement and the requirements of the statute and regulation mentioned before, clarify that before the Bureau may transfer an inmate to pre-release custody at a community-based program the Bureau must first make a decision to reduce the inmate's sentence. Further, the inmate's sentence must be reduced to six months or less before such a transfer because only inmates with six months or less remaining on their term are eligible for pre-release custody. Thus, the Bureau must

reduce the sentence before such a transfer. Otherwise, the

transfer would violate § 3624(c).

The Bureau conducted the final review process for

the Petitioner. After the RDAP staff completed the review,

the Bureau used its statutory discretion and granted the

Petitioner a 108-day sentence reduction. Pursuant to this

reduction and before being transferred to PFF, the

Petitioner's projected release date was changed from

January 23, 2003, to October 7, 2002.

The discretionary authority of the Bureau under

18 U.S.C. § 3621(e) to decide whether or not a sentence

reduction may be granted is not at issue in this case.

Rather, the issue is whether the Bureau, having decided

to grant a sentence reduction, has the statutory authority

to later revoke that decision. A similar inqury arose

in Cort v. Crabtree, 113 F.3d 1081 (9th Cir. 1997), though

in the issue there involved the BOP's decision regarding

eligibility to be considered for a sentence reduction

as opposed to decisions actually granting a sentence

reduction.

In Cort, the three inmate petitioner's brought a

habeas action where the Bureau determined that they were

eligible for sentence reductions under 18 U.S.C. § 3621(e)

but then changed the program regulations and reversed

its decision regarding the inmates' eligibility. The

district court denied habeas relief based in part on the

fact that "even when a statutorily eligible prisoner

10

successfully completes the treatment program, the Bureau retains discretion under the statute to grant or deny a sentence reduction." <u>Cort v. Crabtree</u>, 113 F.3d 1081, 1085 (9th Cir. 1997). The Court of Appeals for the Ninth Circuit disagreed with this reasoning stating: "The fact that the Bureau has such discretion, however, is irrelevant to whether the Bureau determined that the appellants were eligible for such discretionary sentence reduction, and whether it may now change its mind as to that distinct question." <u>Id.</u>

The Ninth Circuit in <u>Cort</u> also rejected the Bureau's assertion that their original eligibility determinations were mere recommendations. "[T]he Bureau's intent to render actual decisions that were binding subject only to program completion, as opposed to mere recommendations, is evidenced by the fact that the Bureau itself referred to them as 'decisions,' and by the fact that the prisoners had the right to appeal these 'decisions,'" <u>Id.</u>

In summary, the Ninth Circuit in <u>Cort</u> noted that the original eligibility decisions of the Bureau were meant to be binding and that the Bureau's authority to reverse those decisions poses a question that is distinct from their authority to grant or deny a sentence reduction. The Ninth Circuit held that the Bureau's new program regulations making the petitioner's ineligible for sentence reductions could not be applied to the petitioner's retroactively; the Bureau was bound by its original

decision that found the inmates statutorily eligible for a sentence reduction. Id. at 1087.

In the Petitioner's case, the Bureau not only made a decision determining that he was eligible for a sentence reduction, it actually reduced his sentence on April 23, 2002, before transferring him to the PFF pre-release program. If the Bureau had not granted him a sentence reduction at that point, the Petitioner's transfer to the pre-release program would have violated 18 U.S.C. § 3624(c). Like the Bureau's decision in Cort, the decision in the Petitioner's case was not a mere recommendation. It was a decision made after careful and final review of the Petitioner's early release eligibility by the RDAP staff, and was specifically authorized by statute.

Title 18 U.S.C. § 3621(e)(2), the statute authorizing the Petitioner's early release, provides in part:

(2) Incentive for prisoner's successful completion treatment program.

(A) Generally. Any prisoner who, in the judgment of the Director of the Bureau of Prisons, has successfully completed a program of residential substance abuse treatment provided under paragraph(1) of this subsection, shall remain in the custody of the Bureau under such conditions as the Bureau deems appropriate...

(B) Period of custody. The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

///

12

1    Contrast this statute with 18 U.S.C. § 3624, the

2  statute authorizing what is commonly known as good conduct

3  time:

4

5    (b) Credit toward service of sentence for satisfactory
     behavior.

6    (1) Subject to paragraph (2), a prisoner who is serving
     a term of imprisonment of more than 1 year ...may

7    receive credit toward the service of the prisoner's
     sentence...subject to determination by the Bureau

8    of Prisons that, during that year, the prisoner has
     displayed exemplary compliance with institutional

9    disciplinary regulations. Subject to paragraph (2),
     if the Bureau determined that, during that year, the

10   ·prisoner has not satisfactorily complied with such
     institutional regulations, the prisoner shall receive

11   no such credit toward service of the prisoner's
     sentence or shall receive such lesser credit as the

12   Bureau determines to be appropriate. 18 U.S.C.
     § 3624(b)(2003)

13

14

15    The good conduct statute unambiguously grants the

16  Bureau discretionary authority to reduce a prisoner's

17  custody for "exemplary compliance with institutional

18  regulations" and just as unambiguously grants authority

19  to disallow good conduct time when the inmate's compliance

20  with regulations is not satisfactory. On the other hand,

21  18 U.S.C. § 3621(e) authorizes the Bureau to reduce an

22  inmate's sentence but is silent with respect to any grant

23  of authority to the Bureau that would allow it to revoke

24  a sentence reduction once it has been granted. In the

25  absence of statutory language authorizing the Bureau to

26  revoke a sentence reduction, the Bureau's decision to grant

27  the Petitioner's sentence reduction should be binding.

28    The Bureau not only lacks statutory authority but

13

1   also lacks regulatory authority to revoke an inmate's

2   sentence reduction once it has been granted. The Code of

3   Federal Regulations section addressing consideration for

4   early release (28 C.F.R. § 550.58) does not anywhere address

5   a grant of authority allowing the Bureau to revoke an

6   inmate's sentence reduction.

7       Although the Bureau's Program Statements imply that

8   the Bureau may revoke a sentence reduction under RDAP,

9   the Courts have noted that cases dealing with requirements

10  promulgated in Bureau Program Statements may have very

11  little precedential force. Jacks v. Crabtree, 114 F.3d

12  983, 985 (9th Cir. 1997). The Court explains:

> Bureau Program Statements are entitled to less
> deference than the published regulations because they
> are not promulgated subject to the rigors of the
> Administrative Procedures Act, including public notice
> and comment, and are "merely internal guidelines [that]
> may be altered by the Bureau at will." (Citation
> omitted) Jacks v. Crabtree, 114 F.3d 983, 985 (9th
> Cir. 1997).

19  Because the Bureau lacked statutory and regulatory

20  authority to revoke the Petitioner's sentence reduction,

21  and because its original decision to grant the reduction

22  should be binding the Bureau exceeded its lawful authority

23  in revoking the Petitioner's 108-day sentence reduction.

24  This, in turn, resulted in a miscalculation of the

25  Petitioner's prison terms and release dates. Had the Bureau

26  not forfeited his sentence reduction, the Petitioner's

27  prison term in the Alien Smuggling Case would have lawfully

28  discharged on November 3, 2002. His six-month sentence

14

in the Judge Whalen Case would have commenced on
November 4, 2002, with his full-term release date in that
case being May 2, 2003, three weeks before the Petitioner
was transferred back to the Community Corrections Center.

Thus, the Bureau cannot stop the petitioner's term
of imprisonment from running on July 8, 2003, and re-start
it on December 23, 2003, as the Petitioner had already
lawfully discharged his imprisonment term on both cases
on May 2, 2003.

The Petitioner is currently in custody in violation
of the Constitution and the laws of the United States,
thus this Great Writ must be granted.

GROUND TWO: <u>The Bureau of Prisons violated the Petitioner's
Fifth Amendment right to Procedural Due Process by failing
to provide the Petitioner notice or opportunity to be heard
thus the Petitioner is unlawfully in custody</u>

Before making a decision to grant a sentence reduction
and transfer an inmate to a pre-release custody program,
the Bureau requires RDAP staff to complete a Final Review
of Inmate's Provisional Early Release (Attachment K). This
final review of the inmate's early release eligibility
is meant to ensure that the Bureau makes an appropriate
decision when considering the inmate's sentence reduction.
Once the RDAP staff reviews the inmate's eligibility in
relation to the appropriate regulatory and statutory
criteria, the Bureau exercises its statutory authority
under 18 U.S.C. § 3621(e)(2)(B) by deciding whether to

15

grant or deny the inmate a sentence reduction.

The Petitioner was subject to this final review process. After the RDAP staff completed this review, the Bureau made a decision to grant the sentence reduction that the Petitioner had expected for completing the 500-hour drug treatment program; he was granted a 108-day sentence reduction. Pursuant to this reduction and before being transferred to PFF, the Petitioner's projected release date was changed from January 23, 2003, to October 7, 2002.

·In order to be in compliance with 18 U.S.C. § 3624(c), an inmate's remaining term of imprisonment must be reduced to six months or less before the inmate may be transferred to a community-based pre-release program because only inmates with six months or less to serve are eligible for pre-release custody.

The Petitioner had a liberty interest in the 108-day sentence reduction granted by the Bureau that is analogous to the liberty interest recognized in Wolff v. McDonnell, 418 U.S. 539 (1974). In Wolff, a state statute authorized the granting of good time credits to inmates and allowed prison officials to forfeit those credits for serious misbehavior. Id. at 557. Wolff asserted that the disciplinary procedures employed by the prison in forfeiting good time were inadequate and violated Due Process. The Court agreed, holding that because the right to good time and its deprivation as a sanction was provided by state statute, the inmates' interest in disciplinary proceedings

16

was protected by Due Process. Id.

In short, inmates were entitled to "those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." Id. Those minimum procedures included: written notice of the claimed violation, a written statement of the evidence relied on, reason for the disciplinary action and an opportunity to be heard and present witnesses. Id. at 563-66. It is now well ·settled that statutes governing good time credits create a liberty interest that is protected by Procedural Due Process safeguards; that liberty interest, simply put, is the freedom of the inmate. Superintendent v. Hill, 472 U.S. 445 (1985). Nelson v. Commissioner of Corrections, 456 N.E.2d 1100 (1983).

The federal statute governing good time credits, 18 U.S.C. § 3624(b), allows the Bureau discretion to grant or deny good conduct time ("GCT"). The statute alone does not create a liberty interest in good conduct time. Rather, the liberty interest arises when the Bureau uses its discretionary authority to grant an inmate GCT. Once the liberty interest arises, it triggers an inmate's Due Process procedural safeguards and the Bureau must then follow the procedural safeguards laid out in Wolff. The policies and procedures followed by the Bureau in forfeiting GCT are laid out in detail in 28 C.F.R. § 541.11-541.19. Briefly, those procedures include notice, right to a hearing, the

17

right to testify, the right to present witnesses and the right to be represented by a Bureau staff member.

Like the statute regulating good conduct time, the statute in this case, 18 U.S.C. § 3621(e)(2)(B), also uses discretionary language in granting the Bureau authority to grant or deny a sentence reduction. While the GCT statute says that a prisoner "may receive credit toward the service of the prisoner's sentence," the drug treatment statute says that a prisoner's period of custody "may be reduced." In this circumstance, the sentence reduction may be granted for completing a drug treatment program.

The issue of whether this statute authorizes the Bureau to forfeit a sentence reduction once granted was discussed earlier. Even assuming arguendo that the statute grants such authority, there is not a sufficient difference between the discretionary wording used in each statute to justify recognizing a liberty interest in good conduct time while denying the existence of a liberty interest in a sentence reduction for completing drug treatment.

Furthermore, while the Court may look to the mandatory wording in a statute to help determine whether a liberty interest exist, the Court may not **only** look at the mandatory language:

> "[W]e believe that the search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly applied in Wolff and Meachum.

18

> Following Wolff, we recognized that States may under certain circumstances create liberty interests which are protected by the Due Process Clause... But these interests will be generally limited to freedom from which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, (citation omitted) nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

> Sandin V. Demont R.D. Conner Et Al, 515 U.S. 472, 483-84 (1995).

In this case at bar, the forfeiture of the Petitioner's 108-day sentence reduction imposed an atypical and significant hardship on the Petitioner. He had settled expectations to be free from custody on May 2, 2003.

From April 23, 2002, the date that the Petitioner was granted a sentence reduction, he had a liberty interest in being free from restraint. He also had a liberty interest in the GCT credits he had accrued during his term of imprisonment. The Bureau forfeited his sentence reduction and his Good conduct time but only followed procedural Due Process safeguards in regard to his good time credits. His sentence reduction was forfeited by the Bureau without notice and without giving the Petitioner an opportunity to be heard.

Thus, the Petitioner is currently in custody in violation of the Constitution and laws of the United States, hence, this Great Writ must be granted.

///

///

19

**THIS HONORABLE COURT SHOULD GRANT THIS GREAT WRIT**

Because the Bureau lacked statutory and regulatory authority to revoke the Petitioner's sentence reduction, and because its original decision to grant the reduction should be binding the Bureau exceeded its lawful authority in revoking the Petitioner's 108-day sentence reduction. Furthermore, the Petitioner had a liberty interest in being free from restraint after the Bureau granted his sentence reduction. Forfeiture of this sentence reduction by the Bureau without providing the Petitioner notice or an opportunity to be heard was a violation of his Fifth Amendment right to Procedural Due Process. For all reasons set forth, this Great Writ must be granted.

V.

CONCLUSION

Wherefore, the Petitioner prays that this Honorable Court will issue an Order Granting the Following Relief:

(a) Order the Petitioner to be immediately released from custody;

(b) Order the Petitioner's term of supervised release to be reduced by a minimum of 108-days pursuant to Title 18 U.S.C. § 3583(e)(1),(2). See Gunderson v. Hood, 268 F.3d 1149 (9th Cir.2001); See also Johnson v. Wiliford, 682 F.2d 868 (9th Cir. 1982).

(c) And any other relief this Honorable Court deems just and proper in the spirit and intent of the law.

Respectfully Submitted,

_February 10, 2004_
(Dated)

SHAWN JAMES ALLEN WOODALL

20

**EXHIBIT 1**

Shawn James Allen Woodall

NAME
57984-198

PRISON NUMBER

Metropolitan Correctional Center

PLACE OF CONFINEMENT

808 Union Street, San Diego, CA 92101

ADDRESS

FILED

04 JAN 27 PM 3: 15

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:                          DEPUTY

# United States District Court
## Southern District Of California

SHAWN JAMES ALLEN WOODALL

(FULL NAME OF PETITIONER)

**Petitioner**

v.

JOE D. DRIVER

(NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER, E.G. PAROLE OFFICER)

**Respondent**

and

The Attorney General of the State of
California, Additional Respondent.

Civil No. **'04 CV 0168 IEG (NLS)**

(TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)

**PETITION FOR WRIT OF HABEAS CORPUS**

UNDER 28 U.S.C. § 2241

1. Type of challenge (CHECK ONE):
   - ☐ Parole
   - ☐ Probation
   - ☐ Loss of good-time credits
   - ☐ Prison disciplinary hearing
   - ☒ Other (specify): _____ Legality of current imprisonment _____

Civ-69 (Rev. 9/97)

K:\COMMON\FORMS\CIV-69.WPD

2. Have you previously filed any petitions, applications, or motions with respect to the execution of your sentence in any court, state or federal?
   ■ Yes  ☐ No

3. If your answer to 2 was "Yes," give the following information:

   (a)(1)   Name of court _Southern District of California, 02cr2383-W._

      (2)   Nature of proceeding _28 U.S.C. Sec. 2255_

      (3)   Grounds raised _(1) Double Jeopardy, (2) Ineffective Assistance of Counsel._

      (4)   Did you receive an evidentiary hearing on your petition, application or motion?
            ☐ Yes  ■ No

      (5)   Result _Relief Denied._

      (6)   Date of result _January 2003._

   (b)   As to any second petition, application or motion give the same information:

      (1)   Name of court _N/A_

      (2)   Nature of proceeding _N/A_

      (3)   Grounds raised _N/A_

Civ-69 (Rev. 9/97)                                          K:\COMMON\FORMS\CIV-69.WPD

-2-

_____

_____

     (4)    Did you receive an evidentiary hearing on your petition, application or motion?
          ~~☐ Yes   ☐ No~~

     (5)    Result _N/A_____

     (6)    Date of result _N/A_____

(c)    Did you appeal, to the highest state court having jurisdiction, the result of action taken on any petition, application or motion?
     (1)    First petition, etc.    ☐ Yes  ■ No
     (2)    Second petition, etc.  ~~☐ Yes   ☐ No~~

(d)    If you did **not** appeal from the adverse action on any petition, application or motion, explain briefly why you did not: _Took Judge Thomas J. Whelan's Ruling As factual and correct concerning the Double Jeopardy issue And ineffective Assistance of Counsel._

4. State *concisely* every ground on which you claim that you are being held in violation of the constitution, law or treaties of the United States. Summarize *briefly* the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.
      CAUTION:  In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. Moreover, if you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.
    You should *raise in this petition all available grounds* on which you base your allegations that you are being held in custody unlawfully.

**A.   Ground one:** The petitioner has been deprived of liberty without due process of law, secured by the Fifth Amendment to the United States Constitution.

**Supporting FACTS** (state *briefly* without citing cases or law)

1. On December 15, 2000, the petitioner was sentenced to 37 months imprisonment with 3 years of supervised release to run consecutive to the aforementioned prison term, for the criminal offense of Alien Smuggling, Case Number 00cr1768-H, in the United States District Court for the Southern District of California.

2. On February 23, 2001, the petitioner arrived at the Federal Correctional Institution in Florence, Colorado to commence serving his term of imprisonment.

3. On July 9, 2001, the petitioner began his participation in the United States Bureau of Prisons Residential Substance Abuse Treatment Program. See Title 18 U.S.C. Sec. 3621(e).     (cont→)

**B. Ground two:** N/A

_____

_____

**Supporting FACTS** (state *briefly* without citing cases or law): N/A

_____

_____

_____

_____

_____

4. On April 10, 2002, the petitioner successfully completed the Residential Substance Abuse Treatment Program.

5. On April 23, 2002, the United States Bureau of Prisons used its statutory discretion, found the petitioner to be a non-violent offender who had successfully completed a treatment program, and therefore reduced the petitioner's term of imprisonment by 108 days, pursuant to the provisions of Title 18 U.S.C. Sec. 3621(e)(2)(B). The petitioner's release date was reduced from January 23, 2003, to a new release date of October 7, 2002.

6. On April 23, 2002, the petitioner was transferred by the United States Bureau of Prisons to a Community Corrections Center pursuant to pre-release custody. Title 18 U.S.C. Sec. 3624(c).

7. On July 5, 2002, the petitioner walked-away from the Community Corrections Center pre-release custody.

8. On July 5, 2002, the United States Bureau of Prisons forfeited the 3621(e)(2)(B) sentence reduction pursuant to Bureau Policy P.S. 5330.10, Chapter 6, Page 10, without any procedural due process safeguards, therefore changed the petitioner's release date from the reduced date of October 7, 2002, to

A new release date of January 23, 2003, which said forfeiture subjected the petitioner to the deprivation of any rights, privileges, or immunities secured by the Fifth Amendment's Due Process Clause to the United States Constitution and laws of the United States.

9. On July 8, 2002, the petitioner self-surrendered to Authorities on a warrant for escape from custody of the Attorney General.

10. On August 8, 2002, the Disciplinary Hearing Officer at the Metropolitan Correctional Center, Mr. Dan McCarthy, forfeited 27 days of good conduct time pursuant to the provisions of Title 18 U.S.C. Sec. 3624(b)(1).

11. On September 30, 2002, the petitioner plead guilty to an indictment for escape from custody of the Attorney General, case number 02cr2402-W. The Honorable Thomas J. Whelan sentenced the petitioner to 6 months imprisonment to run consecutive to any time remaining on 00cr1768-H.

12. The United States Bureau of Prisons Aggregated the 37 month term of imprisonment (00cr1768-H) and the 6 month term of imprisonment (02cr2402-W) to make one 43 month term of imprisonment pursuant to Title 18 U.S.C. Sec. 3584(a).

13. The petitioner lawfully discharged his term of imprisonment on May 2, 2003. By taking the October 7, 2002, Release date, then forfeiting 27 days of good conduct time by Dan McCarthy, would increase the petitioner's Release date to November 3, 2002, (00cr1768-H). Then the consecutive 6 month term of imprisonment by the Honorable Thomas J. Whelan would commence, giving a full term Release date of May 2, 2003, (02cr2402-W).

14. However, because of the UNCONSTITUTIONAL forfeiture of the 3621(e)(2)(B) sentence reduction, not only is the petitioner currently being held over his term of imprisonment, but is also being held to answer an indictment for escape from the Attorney General, which alleges an escape occurred from a Community Corrections Center (02cr2402-W) on July 9, 2003, on a term of imprisonment (02cr2402-W) that expired on May 2, 2003. See U.S. v. Woodall, 03cr1774-DMS.

15. For all reasons set forth, the petitioner is in custody in violation of the Constitution and laws of the United States.
       Thus, this Great Writ must be granted.

5. If any of the grounds listed in 4A, B, C, and D were not previously presented in any other court, state or federal, state briefly what grounds were not presented, and give your reasons for not presenting them:

*I did not exhaust Administrative remedies until February 2003. The issue in this petition just gave rise to the filing herein.*

6. Do you have any petition or appeal now pending in any court, either state or federal, as to the execution of sentence under attack?

     ☐ Yes ■ No

7. Give the name and address, if known, of each attorney who represented you in the following stages of the execution of sentence attacked herein:

     (a)    In any post-conviction proceeding *NONE*

     (b)    On appeal from any adverse ruling in a post-conviction proceeding *NONE*

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____
SIGNATURE OF ATTORNEY (IF ANY)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

*1/26/2004*
_____
(DATE)

_____
SIGNATURE OF PETITIONER

Civ-69 (Rev. 9/97)

K:\COMMON\FORMS\CIV-69.WPD

-7-

## PROOF OF SERVICE BY MAIL

## BY PERSON IN STATE CUSTODY

### (Fed. R. Civ. P. 5; 28 U.S.C. § 1746)

I, __Shawn James Allen Woodall_____, declare:

I am over 18 years of age and a party to this action. I am a resident of _San Diego,_____

__Metropolitan Correctional Center_____ Prison,

in the county of _San Diego_____,

State of California. My prison address is: __808 Union Street, San Diego, CA 92101_____.

_____.

On _____,

(DATE)

I served the attached: _Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241____

_____

(DESCRIBE DOCUMENT)

on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope, with postage

thereon fully paid, in the United States Mail in a deposit box so provided at the above-named correctional

institution in which I am presently confined. The envelope was addressed as follows:

__Ms. Anne K. Perry, Assistant U.S. Attorney, 880 Front Street, San Diego, CA 92101__

__Joe D. Driver, Warden, Metropolitan Correctional Center, 808 Union Street, 92101__

I declare under penalty of perjury under the laws of the United States of America that the forgoing

is true and correct.

Executed on _1/26/2004_____    _____

(DATE)                      (DECLARANT'S SIGNATURE)

## CERTIFICATE OF SERVICE

I, hereby certify under the penalty of perjury under the laws of the United States of America, that a true and correct copy of the foregoing was mailed to the below named individuals:

        Joe D. Driver
        Metropolitan Correctional Center
        808 Union Street
        San Diego, CA 92101

        Anne K. Perry
        Assistant U.S. Attorney
        880 Front Street
        San Diego, CA 92101

February 10, 2004
    (Dated)                                    SHAWN JAMES ALLEN WOODALL